UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Nicholas Samuel Coffey,

    Plaintiff,

v.                                        Case No. 16-13081

Adam Carroll, Michael Pranger,
and James Pilchak,                Sean F. Cox
                                              United States District Court Judge

    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this § 1983 case, Plaintiff brings claims against three City of Taylor police officers for unlawful entry into his home, excessive force, and malicious prosecution. Discovery has concluded and Defendants have moved for summary judgment, asserting qualified immunity.

For the reasons below, the Court shall deny the Motion for Summary Judgment as to Plaintiff's unlawful entry and excessive force claims because material questions of fact exist as to whether Defendants are entitled to qualified immunity. As for the malicious prosecution claim, the Court shall deny the motion as to Defendants Carroll and Pranger for the same reason. But the Court shall grant summary judgment on that claim as to Defendant Pilchak because Plaintiff has not shown that Defendant Pilchak made, influenced, or participated in the decision to prosecute.

## BACKGROUND

In February 2016, after an evening of drinking alcohol and playing videogames, Plaintiff Nicholas Coffey spent the night at a nearby friend's house. Def. Stmt. of Undisputed Facts, ¶ 5-

1

8. The next morning, after drinking more liquor, Plaintiff asked a friend for a ride home. *Id.* at ¶ 9-10. Plaintiff asked to be dropped off at an elementary school located about a half-mile from his house because he did not want his father to know that he had been drinking. *Id.* at ¶ 11. Plaintiff and his friend, Drew Jerrell, were subsequently dropped off at the school. *Id.* at ¶ 12.

As the two walked to Plaintiff's home, Jerrell attempted to break into a car that was parked in a driveway. *Id.* at ¶ 13. The car's owner, Christina Cervantes, observed the attempt and yelled at Jerrell. N. Coffey Dep., p. 30. Plaintiff, who was a few feet away, turned around and walked away because he "didn't want any part" of what was happening. *Id.* at 31, 33. He and Jerrell then continued to walk to towards Plaintiff's home. *Id.* at 35-36. Jerrell proved not to be the most adept criminal; because there was snow on the ground, the two left a trail of footprints between Cervantes' car and Plaintiff's home. Def. Stmt., ¶ 17.

When the two arrived at the home, Jerrell went upstairs to sleep in Plaintiff's bed while Plaintiff fell asleep downstairs on a loveseat. *Id.* at ¶ 18. Plaintiff's father, David Coffey, was also downstairs watching television on the couch. *Id.* at ¶ 19.

At the same time, Cervantes called 911 to report the incident. *Id.* at ¶ 15. She gave the Taylor Police Department descriptions of Jerrell and Plaintiff. *Id.* In response, Defendants–City of Taylor Patrolmen Adam Carroll, Michael Pranger, and James Pilchak–went to Cervantes' home. Def. Stmt., ¶ 23. After speaking with her, Defendants followed the fresh footprints from her vehicle to Plaintiff's home. *Id.* at ¶ 24.

Defendants arrived at the home and knocked on the door. D. Coffey Dep., p. 24-25. After David confirmed that Plaintiff and Jerrell were inside, Defendants entered the home. *Id.* at 27. Per David Coffey, Defendants neither asked to enter nor did Mr. Coffey give them consent

to do so. *Id*. It is at this point that the parties' versions of events differ substantially.

According to Plaintiff, Officer Carroll approached him as he was still sleeping and attempted to wake him up by poking him in the chest and shaking him. *Id*. at 29-30. When this proved unsuccessful, an officer punched him in the face and Defendants surrounded him, yelling for him to "stop resisting." *Id*. at 30-33. Plaintiff testified that he never grabbed or kicked Defendants. N. Coffey Dep., p. 104. Anyhow, as he came to, he was flipped over and handcuffed. *Id*. at 46, 107. Defendants then began dragging him outside, sending him face-first through the house's storm door. *Id*. at 44-48, 51, 107. The officers then put Plaintiff in the backseat of a police car. *Id*. at 44. During the incident, Plaintiff sustained injuries to his ear, mouth, chin, and nose. *Id*. at 52. He did not seek treatment for his injuries. Def. Stmt., ¶ 48.

Defendants tell a different tale. According to them, Officer Carroll attempted to wake Plaintiff up by tapping him on the shoulder a few times. Def. Stmt., ¶ 27. When Plaintiff arose, he grabbed Officer Carroll's left index finger and began to twist it. *Id*. at ¶ 28. This prompted Defendants to attempt to arrest Plaintiff for assaulting an officer, during which Plaintiff continued to fight and wrestle his arms away. *Id*. at ¶ 29. He also kicked Officers Pranger and Pilchak several times. *Id*. at ¶ 30. Eventually, Plaintiff was restrained, handcuffed, and placed in the back of a police car. *Id*. at ¶ 31.

After his arrest, Plaintiff spent two nights in jail. N. Coffey Dep., p. 98-99. A felony warrant request was then approved by the Wayne County Prosecutor's Office. Def. Stmt., ¶ 39. After a preliminary examination, Plaintiff was bound over on charges of attempted larceny from a vehicle and assaulting a police officer. *Id*. at ¶ 40-42. Plaintiff was acquitted of these charges following a jury trial. *Id*. at ¶ 44, 46.

In August 2016, Plaintiff filed this § 1983 suit against Defendants and the City of Taylor, which has since been dismissed from the case. *See* Stipulation and Order of Dismissal (Doc. # 26). Plaintiff alleges that Defendants violated his Fourth Amendment rights by: (1) entering his home without a warrant or an exception to the warrant requirement; (2) subjecting him to excessive force; and (3) causing him to be arrested and prosecuted without probable cause to believe he committed the crimes charged.

Defendants have moved for summary judgment (Doc. # 20) and Plaintiff has responded (Doc. # 24). The Court held a hearing on this motion on February 22, 2018.

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch*., 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

Defendants assert qualified immunity in response to Plaintiff's § 1983 claims. Thus, Plaintiff "bears the burden of showing that (1) the defendant's acts violated a constitutional right and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct." *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015).

### I. Unlawful Entry

Plaintiff first contends that Defendants violated his Fourth Amendment rights by entering his home without a warrant. Defendants' entry into the home is faced with two presumptions: the presumption against warrantless entries into a home, *Payton v. New York*, 445 U.S. 573, 590 (1980) (holding police officers may not enter a private home without a warrant absent an exigency of consent) and the "presumption against warrantless entries to investigate minor crimes or to arrest individuals for committing them." *Smith v. Stoneburner*, 716 F.3d 926, 930-31 (6th Cir. 2013).

Both presumptions are implicated here. Defendants approached Plaintiff's home to investigate a minor crime; attempted larceny from a motor vehicle is a misdemeanor under Michigan law. M.C.L. § 750.356a(2)(b). And Plaintiff alleges that when Defendants arrived, they confirmed that he was inside and immediately entered the home. They never asked for consent and they never obtained it. Taking this account in the light most favorable to Plaintiff, this entry violated his Fourth Amendment rights. It is undisputed that Defendants did not have a warrant. Yet there is no indication that exigent circumstances–such as hot pursuit or the potential destruction of evidence–justified the warrantless entry. *See Stoneburner*, 716 F.3d at 931. Nor did Defendants have consent to enter the home. Although it appears that Officer Carroll testified at Plaintiff's trial that David Coffey gave Defendants permission to enter the home, Pl. Ex. 5, p. 39, this only creates a triable issue of material fact for the jury. *See Stoneburner*, 716 F.3d at 930.

This warrantless entry also violated Plaintiff's clearly established Fourth Amendment rights. A bedrock principle of Fourth Amendment jurisprudence is that officers cannot enter a home without a warrant, absent consent or exigent circumstances. For decades it has been clear

that "a double presumption guard[s] against warrantless entries into a home to arrest a misdemeanor suspect." *Id*. at 933. Thus, Defendants are not entitled to qualified immunity because genuine issues of material fact exists as to whether their warrantless entry violated Plaintiff's clearly established Fourth Amendment rights and the Court shall deny their Motion for Summary Judgment on this claim.

## II. Excessive Force

Next, Plaintiff claims that Defendants used excessive force during his arrest. "A police officer uses excessive force in arresting a suspect if his actions are objectively unreasonable given the nature of the crime and the risks posed by the suspect's actions." *Stoneburner*, 716 F.3d at 933. When evaluating this claim, the Court views "the situation from the perspective of a reasonable officer on the scene at the time." *Smith v. City of Troy*, 874 F.3d 938, 943 (6th Cir. 2017). The Court considers the severity of the crime, whether the suspect posed a threat, and whether the suspect was actively resisting arrest. *Id*. at 944.

The parties provide two sharply diverging accounts of Plaintiff's arrest. Plaintiff account tells of an alarming beginning: an officer punching him in the face as he slept on a couch. And this act set the tone; despite Plaintiff's non-resistance, Defendants abruptly handcuffed him and rushed him out of the house, striking his face on the storm door on the way. This conduct, if true, was objectively unreasonable. Defendants were investigating a non-violent misdemeanor, Plaintiff posed no threat when he was sleeping or while he was handcuffed, and he did not actively resist arrest. And Plaintiff's right to be free from such force–both the punch to the head and the use of his face as a battering ram–was clearly established at the time. *See Smith*, 874 F.3d at 945 ("It was well-established at the time of the incident in this case that a non-violent,

non-resisting, or only passively resisting suspect who is not under arrest has a right to be free from an officer's use of force."); *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 408 (6th Cir. 2009) ("[I]n this Circuit, the law is clearly established that an officer may not use additional gratuitous force once a suspect has been neutralized.").

Of course, if (as Defendants claim) Plaintiff was resisting arrest, then the use of force may have been reasonable. Indeed, this circuit has ratified the use of far greater force when a suspect is actively resisting arrest. *See Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012) ("If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him."). But this case is before the Court at the summary judgment stage and not all of the testimony supports Defendants' version of events. Usually, the presence of dueling accounts create a question of fact that precludes qualified immunity and summary judgment. *Stoneburner*, 716 F.3d at 934.

To overcome this, Defendants argue that the Court cannot credit Plaintiff or David Coffey's testimony. They contend that Plaintiff has "no memory of 'any of the things [he] did between the time [he] was woken up and taken through the door" and that David admitted that his view was "obstructed." Def. Reply Br., p. 4-5. But neither of these arguments show that Plaintiff's account is based on speculation, not personal knowledge. *See* Fed. R. Civ. Pro. 56(c)(4). The former is an out-of-context quotation of a deposition *question*, to which Plaintiff's response did not state that he did not remember the arrest. *See* N. Coffey Dep., p. 48 ("I wasn't really in control of my body, so no. I didn't do anything."). Indeed, the suggestion that Plaintiff does not remember the events is belied by the rest of his testimony recounting what happened after he woke up on the couch. As for David Coffey, although he admitted his view was

7

"obstructed" at some points, he clearly testified about Defendants' actions that he saw, including the punch. *See* D. Coffey Dep., p. 28-29. Thus, these isolated statements plucked selectively from the depositions do not remotely justify the conclusion that Plaintiff has not offered admissible evidence to support his claim.

In sum, there is a genuine issue of material fact as to whether Defendants violated Plaintiff's clearly established rights by using excessive force to arrest him. Thus, Defendants are not entitled to qualified immunity or summary judgment on this claim.

### III. Malicious Prosecution

This brings the Court to Plaintiff's final claim for malicious prosecution. A Fourth Amendment malicious prosecution claim encompasses wrongful investigation and prosecution. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). It is distinct from a false arrest claim, as it "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Id.*, quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007). The claim itself is a misnomer; no showing of malice is required. *Id.* at 309. Instead, to succeed on his Fourth Amendment malicious prosecution claim under § 1983, Plaintiff must prove: (1) a criminal prosecution was initiated against him and Defendants made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) Plaintiff suffered a deprivation of liberty under the Fourth Amendment, apart from the initial seizure; and (4) the criminal proceeding was resolved in his favor. *Id.* at 308-09. It is undisputed that Plaintiff has satisfied the fourth element here.

**a. Whether Defendants Made, Influenced, or Participated in the Decision to Prosecute**

The crux of the parties' dispute is whether Defendants made, influenced, or participated

8

in the decision to prosecute. They did not make the decision; under Michigan law the decision to prosecute lies in the prosecutor's sole discretion. *Moldowan v. City of Warren*, 578 F.3d 351, 400 (6th Cir. 2009). Yet this does not end the analysis. Plaintiff may show that Defendants influenced or participated in the decision, an inquiry that "hinges on the degree of the officer's involvement and the nature of the officer's actions." *Sykes*, 625 F.3d at 311 n. 9.

For Officers Carroll and Pranger, Plaintiff's claim is that they falsely testified at his preliminary examination, after which he was bound over for trial. Specifically, he contends that the officers falsely testified that he assaulted them prior to his arrest. To show that testifying officers were responsible for commencing a criminal proceeding, Plaintiff must demonstrate that the officers testimony included a deliberate falsehood or showed reckless disregard for the truth and that the allegedly false or omitted information was material to the court's finding of probable cause. *Id*. at 312.

Plaintiff has presented enough evidence to create a question of fact on this issue. The parties' versions of Plaintiff's arrest diverge substantially. According to Plaintiff, he never assaulted the officers or resisted arrest, whether by twisting fingers or kicking shins. Both his and his father's deposition testimony squarely contradict the officers' testimony at the preliminary examination and a reasonable jury could rely on the deposition testimony to find that the officers' testimony was false or made with a reckless disregard for the truth.

This testimony was also material to the court's finding of probable cause. "Probable cause to prosecute exists when the facts and circumstances are sufficient to lead a reasonable person to believe that the accused committed the particular offense with which he is to be charged." *Mott v. Mayer*, 524 F. App'x 179, 187 (6th Cir. 2013). It stands to reason that the

9

officers' testimony stating that Plaintiff assaulted them–the only testimony taken at the preliminary examination–was material to the court finding probable cause to prosecute Plaintiff for assaulting a police officer. Thus, at this stage, there is at least a question of fact as to whether Officers Carroll and Pranger influenced or participated in the decision to prosecute.

Whether Officer Pilchak did so is a different matter. Because he did not testify at the preliminary examination,[1] Plaintiff's malicious prosecution claim against him is predicated on his alleged participation in preparing and filing the police report, which stated that Plaintiff assaulted the officers. To show that Officer Pilchak influenced or participated in the decision to prosecute on this basis, Plaintiff must present some evidence to show that the impact of the misstatements and falsehoods in Officer Pilchak's investigatory materials extended beyond the initial arrest and influenced his continued detention. *Sykes*, 625 F.3d at 316. This he cannot do.

Although Plaintiff claims that Officer Pilchak was involved in filing the police report, he has presented no evidence in that regard. The complainant on the police report was Officer Carroll and the report was signed by a non-party, Corporal David Jones. There is no indication in the record that Officer Pilchak had a hand in writing the report. Thus, it cannot be said that the decision to prosecute was based on *Officer Pilchak's* investigative materials. *Cf. Sykes*, 625 F.3d at 316-17 (holding an officer's "affirmative misrepresentations and omissions in his arrest-warrant application and investigative report" influenced the decision to prosecute). And because Plaintiff cannot show that Officer Pilchak influenced or participated in the decision to prosecute, he cannot show that Officer Pilchak violated his Fourth Amendment rights. Thus, Officer

---

[1] Although Plaintiff's counsel stated at the hearing that Officer Pilchak testified at the preliminary examination, the transcript of that hearing shows that not to be the case. Def. Ex. C.

10

Pilchak is entitled to qualified immunity and summary judgment on this claim.

### b. Whether There was Probable Cause to Prosecute

For Officers Carroll and Pranger, however, the Court must consider whether Plaintiff can show the remaining elements of his malicious prosecution claim, the first of which is whether there was probable cause to prosecute. There is at least a question of fact on this element as the officers were the sole source of probable cause. If their claim that Plaintiff assaulted them was false, as Plaintiff contends and his evidence supports, then there could be no probable cause to prosecute Plaintiff for a fabricated incident. Whether that account is to be believed is a question for the jury.

### c. Whether There was a Deprivation of Liberty Apart from the Initial Seizure

Finally, the Court must consider whether Plaintiff suffered a deprivation of liberty, cognizable under the Fourth Amendment, apart from his initial arrest. Traditionally, this element is easily satisfied; malicious prosecution cases often involve parties who had been detained prior to trial. *See Fisher v. Dodson*, 451 F. App'x 500, 502 (6th Cir. 2011). But because Plaintiff was released on bond pending trial, his claim is of a different sort. He instead contends that his pretrial release conditions satisfy the deprivation of liberty element. These conditions prohibited him from leaving the State of Michigan, from using or possessing alcohol or controlled substances unless prescribed by a doctor, and from having contact with the victim. Pl. Ex. 6. They also required him to appear for any court proceedings. *Id*.

The imposition of these pretrial release conditions is sufficient to establish that Plaintiff suffered a deprivation of liberty apart from his initial arrest. *See Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017) (holding a pretrial release program requiring the plaintiff to pay a $35

fee, possibly post bond, attend court appearances, and check in with a case manager once a week was a deprivation of liberty). Plaintiff was placed on a personal bond, his travel was restricted, and he was required to attend court appearances. *See id.*; *see also Noonan v. County of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017) (holding no seizure occurred where the plaintiff "was never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions."); *Johnson v. City of Cincinnati*, 310 F.3d 484, 492 (6th Cir. 2002) (acknowledging that other circuits have ruled that pretrial interstate travel restrictions and mandatory court attendance constitutes a seizure). The combination of these conditions satisfies the fourth element of Plaintiff's malicious prosecution claim.

In sum, Plaintiff has presented sufficient evidence at this stage to meet all four elements of his malicious prosecution claim as to Officers Carroll and Pranger, thereby showing a violation of a constitutional right.

### d. Whether Defendants Violated a Clearly Established Right

Because Defendants assert qualified immunity, the remaining question is whether their actions–allegedly providing false statements at the preliminary examination–violated Plaintiff's clearly established rights. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation marks omitted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

When Plaintiff was arrested, it was well-established in this circuit that police officers violate the Fourth Amendment by fabricating probable cause to prosecute by providing false

statements at a preliminary examination, thereby effectuating a seizure. *See Sykes*, 625 F.3d at 313-14 (affirming a Fourth Amendment malicious prosecution claim where the officer provided false testimony at the preliminary examination); *see also Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) ("Freedom from malicious prosecution is a clearly established Fourth Amendment right."). Officers Carroll and Pranger are not entitled to qualified immunity because there is a question of fact as to whether they violated Plaintiff's clearly established rights by providing false preliminary examination testimony. The veracity of their account is for the jury to decide. Thus, the Court shall deny their Motion for Summary Judgment on this claim.

## CONCLUSION

For the reasons above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The Court shall DENY the motion in full as to Defendants Carroll and Pranger because there are questions of material fact about whether they are entitled to qualified immunity. For Defendant Pilchak, the Court shall DENY the motion as to Plaintiff's unlawful entry and excessive force claims but GRANT his motion as to the malicious prosecution claim because Plaintiff has not shown that Defendant Pilchak made, influenced, or participated in the decision to prosecute. Accordingly, this case shall proceed to trial.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 27, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 27, 2018, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager